[No. 38286.   En Banc.   August 31, 1967.]

WALTER PETERSAVAGE, *Appellant*, v. EARL BOCK *et al.*, *Respondents.**

*Reported in 431 P.2d 603.

*Bianchi & Tobin,* by *Gordon R. Tobin,* for appellant.

*Martin, Shorts & Bever,* by *Preston Niemi,* for respondents.

HALE, J.—Defendant Bock, driving on to a 5-lane arterial street, cut across three lanes in a left turn, to be struck at the rear of his 1953 Buick sedan by a car moving along the arterial. Did the court properly submit the negligence of either driver to the jury?

Holman Road, a 5-lane arterial running east and west in Seattle, has two lanes for eastbound traffic and two for westbound, with a center lane between them for vehicles turning left. A well-lighted, busy shopping area flanks both sides of the highway. Mr. Bock had completed his shopping at a grocery store in the shopping center on the northerly side of the highway at about 4:45 in the early evening of December 24, 1963. He intended, on leaving the parking area of the shopping center, to drive across the two westbound and the center lanes, make a left turn into an eastbound lane and proceed easterly on Holman Road. Before entering the arterial, he brought his automobile to a stop

near the edge of the highway where the driveway from the parking center enters Holman Road. It was dark, his lights were on, and the streets were wet with rain. He said he could see both east and west for a distance of one and one-half blocks and that he waited until traffic coming from his left had gone by before starting across.

Mr. Bock testified that, at the moment he started across Holman Road, the closest vehicle approaching him from his right, that is, moving east along the arterial, was a block to a block and one half away. He saw the lighted headlights on this vehicle and noted other cars behind it, all of them with their lights on. He drove straight on to Holman Road, cutting across three or possibly four lanes of traffic, and made a sharp left turn on and into one of the eastbound lanes. He had completed the turn and moved only 50 feet easterly along the highway and was traveling at 20 miles per hour and accelerating at the moment when his vehicle was struck in the rear by the front of the Petersavage car.

Bock says he did not know whether the car whose lights he saw a block to a block and a half away when he began to cut across the highway were those of the Petersavage car, for he did not see the Petersavage vehicle before it struck him. His claim that the record provides substantial proof of plaintiff's contributory negligence is based on a pure assumption that the lights he saw coming toward him when he entered the highway were those of the Petersavage car; and assumes that, if it were that car, it would necessarily be traveling at a rate of speed greater than that fixed by statute in order to collide with him as he drove from his stopped position across three or four lanes into a left turn and moved 50 feet down the highway.

Mr. Petersavage, the plaintiff, said that he was driving his Volkswagen Karman Ghia easterly along Holman Road in the inside eastbound lane; it had been raining but the rain had stopped shortly before the accident. Although there were cars back of him and a few ahead, he described the traffic as fairly light for that particular district. He had been in the inside eastbound lane for a block or two before

the collision, he said, and impact occurred where the highway is straight for a distance of 250 yards in both directions. He testified that he was driving 30-32 miles per hour and did not see the Bock car enter upon or cut across the highway, and that when he first caught sight of the Bock vehicle

> It must have been practically right at the point of impact. He had shot out and was right in front of me coming out of the driveway and right into my lane of traffic. . . . Well, it happened so fast, I do remember trying to hit the brake and trying to swerve to the right.

He said he had been watching traffic in both directions and heard no horn or warning of any kind nor did he see the Bock car in front of him until virtually the moment of impact.

The only witness testifying directly as to the plaintiff's speed, other than the plaintiff himself, a Mr. Schuster, said that he saw defendant Bock start across the highway when the Petersavage vehicle was only about 100-150 feet away, and traveling easterly at what the witness described as a normal rate of speed. He said that the cars collided after Bock had completed his left turn and had moved only 50 feet down the highway. The record thus reveals no evidence of unlawful speed on the part of Mr. Petersavage other than Bock's mere inference that he had to have been driving in excess of the speed limit in order to arrive at the point of collision at the time and place of impact.

The trial judge submitted to the jury the issues of defendants' negligence and plaintiff's contributory negligence, and, from a judgment entered upon a verdict for the defendants, plaintiff appeals. Plaintiff assigns error to the court's denial of his motion for a directed verdict and to the court's giving of instruction No. 14, concerning the overtaking and passing of vehicles traveling in the same direction. Five other assignments of error appear superfluous to a solution of this case and will not be discussed.

■ Before entering upon and crossing the two westbound and the center lanes to turn east into the traffic,

Bock had a positive duty to stop, observe all traffic upon the arterial and yield the right of way to all traffic moving in either direction. He was obliged to see and appreciate the presence of all vehicles going in either direction and to allow them a fair margin of safety. The evidence conclusively established that he failed to see what was there to be seen on a straight, level, arterial street, or, if he saw it, failed as a matter of law to provide a fair margin of safety in entering, crossing and proceeding along the arterial. These are facts upon which reasonable minds could not differ, for there was no dispute in the evidence as to what Bock did or failed to do. RCW 46.60.190 (now RCW 46.61.205 and 46.61.365). The evidence thus established Bock's negligence as a proximate cause of the accident as a matter of law. *Kerlik v. Jerke,* 56 Wn.2d 575, 354 P.2d 702 (1960); *Cooney v. Tacoma Moving & Storage Co.,* 155 Wash. 628, 285 Pac. 667 (1930).

But what of Petersavage's contributory negligence? Was there any evidence that he failed to maintain a proper lookout, or was driving at an excessive speed under the conditions then prevailing? He testified that he was driving 30-32 miles per hour on the arterial in a 35-mile-per-hour zone, looking particularly for traffic ahead and for cars entering the arterial from his right and also taking notice of approaching traffic. He did not see defendants' car cut across the arterial and turn in front of him. No evidence, nor inferences derivable therefrom, establishes that he was then driving at an excessive speed under the circumstances.

Defendants argue that, even if the evidence does not provide substantial evidence of Mr. Petersavage's excess speed, it does supply substantial evidence that he failed to maintain a proper lookout, but we cannot accept this reasoning. One driving upon an arterial highway has a right to assume that cars entering upon it will yield the right of way, and he is not obliged to anticipate that vehicles standing or approaching to enter will fail to yield the right of way. Only when it becomes apparent to the fa-

vored driver that the disfavored driver will not yield, is he required to react concerning this possible danger.

When, in the exercise of reasonable care, it becomes apparent to the favored driver that the disfavored driver will not yield the right of way, the favored driver is, nevertheless, still entitled to a reasonable reaction time before he can be charged with contributory negligence. *Archibald v. Gossard*, 65 Wn.2d 486, 397 P.2d 851 (1965); *Bellantonio v. Warner*, 47 Wn.2d 550, 288 P.2d 459 (1955); *Massengale v. Svangren*, 41 Wn.2d 758, 252 P.2d 317 (1953). To rule differently, would, we fear, make shambles of the right-of-way rule. Everyone driving upon an arterial highway observing vehicles at the intersections, approaching or waiting to enter, would be obliged to slow his vehicle to a near halt until he could ascertain with reasonable certainty whether the approaching vehicles intended to allow a fair margin of safety before entering upon the arterial. This, of course, defeats the very idea of arterial highways and the right of way at uncontrolled intersections, both of which are designed to allow a continuous flow of traffic at safe speeds.

▇▇ Accordingly, since the record fails to show substantial evidence of plaintiff's unlawful speed or failure to maintain a proper lookout or react reasonably to a sudden emergency, his negligence was improperly submitted to the jury. It is error to submit an issue of fact to the jury where there is no substantial evidence to support it. *Bensen v. South Kitsap School Dist. No. 402*, 63 Wn.2d 192, 386 P.2d 137 (1963); *Reynolds v. Phare*, 58 Wn.2d 904, 365 P.2d 328 (1961); *Leavitt v. De Young*, 43 Wn.2d 701, 263 P.2d 592 (1953). Plaintiff was, therefore, entitled to a directed verdict on the question of liability.

Closely related to the problems of contributory negligence is plaintiff's assignment of error directed to instruction No. 14 relating to overtaking or passing another vehicle traveling the same direction, as follows:

> You are instructed that the driver of a motor vehicle who overtakes a slower moving vehicle traveling in the same direction has a duty to exercise due and reasonable

care to avoid collision with the rear end of such slower moving vehicle, by slowing his speed or passing clear of the overtaken vehicle.

RCW 46.60.040 (now RCW 46.61.110) prescribes the rules for overtaking and being overtaken by vehicles traveling the same direction:

> Any person driving a vehicle upon any public highway of this state and overtaking another vehicle proceeding in the same direction shall pass to the left of such overtaken vehicle: *Provided*, That it shall be unlawful for any person to pass any vehicle overtaken unless he shall have a clear and unobstructed view ahead for a distance sufficient for safe passing, all factors considered. Any person driving a vehicle upon any public highway and being overtaken by any vehicle proceeding in the same direction shall keep to the extreme right hand side of such public highway and shall not accelerate his speed until the overtaking vehicle shall have resumed a driving position and speed ahead of him. The overtaking vehicle shall drive clear of the overtaken vehicle and shall continue its overtaking speed until it has passed the overtaken vehicle and shall have resumed its driving position to the right of such public highway. No person driving any vehicle upon any public highway out side incorporated cities and towns and overtaking another vehicle proceeding in the same direction shall overtake such vehicle or drive within a distance of less than fifty feet of such overtaken vehicle for such purpose without first signaling his intention to pass by use of horn or other sounding device.

Defendants cite this statute and the case of *Nelson v. Molina*, 53 Wn.2d 412, 334 P.2d 170 (1959), but neither the statute nor that case seem controlling here. In *Nelson*, there was evidence that Molina had been moving upon the arterial 7 or 8 seconds before impact and additional evidence that the driver on the arterial drove in excess of both the legal and reasonable speeds, laying down 219 feet of skid marks and thus presenting evidence of negligence on the part of each driver for the jury to consider.

In the instant case, Bock was struck at a point within 50 feet from where he had completed his turn into the east-

bound lane, and could have been moving along the highway for only 2 or possibly 3 scant seconds before impact— hardly a sufficient time and distance within which the process of being overtaken on the public highway within the meaning of RCW 46.60.040 could be established.

■■ One vehicle cannot be said to be overtaking and passing another on the highway within the purview of RCW 46.60.040 unless the forward vehicle has been ahead of the following car for both a sufficient time and distance to allow a reasonably prudent driver in the following car to note the presence of and intentionally maneuver his vehicle with reference to the forward car. Statutes governing the rules of the road and thus affecting the safety of all persons upon the public streets and highways must be read in consonance with their intended purpose and the realities of highway safety.[1] The time and distance during which one car can be said to be following another ought not be shorter than the average time and distance needed by a reasonably prudent driver in bringing his car to a stop from a lawful speed or to safely take remedial action with respect to the forward vehicle.

■ Petersavage, having the Bock car on the highway in front of him for not more than 3 seconds in time and 50 feet in distance, was not overtaking and passing the Bock automobile under RCW 46.60.040 and could not, therefore, be held in violation of the statute. It was thus erroneous to submit instruction No. 14 to the jury for the rule set forth therein had no relevance to the facts of the case. *Bensen v.*

---

[1]Although the average man is no legal substitute for the law's concept of the reasonably prudent man, the former ought not be ignored in applying the statutes governing highway safety. Scientific findings now widely accepted take into consideration not only speed and distance but perception and reaction times in computing average stopping distances. Thus, at a speed of 20 miles per hour, the average driver will travel 22 feet while perceiving the emergency, another 22 feet while reacting to it, and a final 25 feet before stopping, bringing the total stopping distance at 20 miles per hour to 69 feet; at 30 miles per hour it will take 114 feet to stop, and at 35 miles per hour 145 feet. Uniform Table on Driver Stopping Distances, Including Perception-Reaction Distance, 10 Am. Jur. Proof of Facts, Appendix, Figure 21.

*South Kitsap School Dist. No. 402, supra; Reynolds v. Phare, supra; Leavitt v. De Young, supra.*

Bock's negligence having been established as the proximate cause of the accident as a matter of law, and there being no evidence of plaintiff's contributory negligence, the cause is remanded with directions to grant plaintiff a new trial on the issue of damages only.

Reversed and so ordered.

FINLEY, C. J., DONWORTH, WEAVER, ROSELLINI, and HUNTER, JJ., concur.

HILL, J. (concurring specially)—I agree that the defendant Bock was negligent as a matter of law; however, whether the plaintiff Petersavage was contributorily negligent was an issue for the jury. I would, therefore, grant a new trial on the issues of liability and damages.

HAMILTON, J., concurs with HILL, J.