**DANIEL MARTIN, Plaintiff**

v.

**BLUEBEARD HOUSING CORP., Defendant**

Civil No. 90-1976

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 29, 1977

498

DANIEL MARTIN, St. Thomas, V.I., *pro se*

PALLME, ANDUZE, MITCHELL & DOW (WILLIAM PALLME, of counsel), St. Thomas, V.I., *for defendant*

HODGE, *Judge*

## MEMORANDUM OPINION

Plaintiff is a tenant of defendant, a federally assisted public housing project. Following an earlier dispute regarding rent and utility charges, judgment was entered on August 2, 1974, by the Municipal Court (now Territorial Court) in Civil No. 964-1973.

This case, though chronologically current, has traveled a long and winding road in reaching its conclusion because of its inherent relationship to and its consolidation with Civil No. 964-1973. In that original action for income accounting and for rent, the position of the parties was reversed (Daniel Martin was defendant and Bluebeard Housing Corporation was plaintiff); but the parties ultimately entered into a stipulation of settlement which was reduced to judgment on August 2, 1974. The critical portion of that judgment which has led to continuing litigation in both cases is the following:

... So long as said Defendant Daniel J. Martin remains in possession after the trial hereof, Defendant shall pay monthly rental of $141.60, including charges for utilities on the first day of each and every month, beginning with the month of May, 1974. Bluebeard Housing Corporation v. Martin, Civil No. 964-1973 (Mun. Ct., August 2, 1974).

In the current case, plaintiff contends that this language means that his total monthly charges will remain the same indefinitely or for as long as he occupies the premises in question. On the other hand, defendant contends that the total monthly charges were not intended to remain the same indefinitely, and that absent a specific deadline, the language implied that those charges would be applicable for

499

only a reasonable period of time to allow plaintiff, an over-income tenant, to obtain other premises. Defendant further contends that in any event the stipulation underlying the August 2, 1974, judgment and the judgment itself were violative of federal housing laws which require periodic adjustment of rental and utility charges to meet increasing costs.[1]

It is this conflict in the interpretation of the August 2, 1974, judgment that has led to (1) the filing of this action for declaratory judgment, (2) an order amending judgment dated December 24, 1976, which added the words ". . . but ending with the month of April, 1976." to the judgment in Civil No. 964-1973, and (3) the stipulation of the parties on February 4, 1977, to extend the year "1976" in the order amending judgment to the year "1977", thereby settling once and for all any questions regarding the original judgment. Accordingly, based upon the August 2, 1974, judgment, the December 24, 1976, order amending judgment and the February 4, 1977, stipulation and settlement, the agreed upon and finalized language reads as follows:

. . . So long as said Defendant Daniel J. Martin remains in possession after the trial hereof, Defendant shall pay monthly rental of $141.60, including charges for utilities on the first day of each and every month, beginning with the month of May, 1974 *but ending with the month of April, 1977.* (Emphasis added.)

Despite this final settlement subsequent to the consolidation of both cases pursuant to plaintiff's own motion of August 6, 1976,[2] plaintiff nevertheless demands additional

---

[1] The issue of federal preemption raised by defendant need not be addressed because of the rationale underlying the decision in this case, but see Virgin Islands Urban Renewal Board v. George, Civil No. 375C-1976 (Terr. Ct. V.I., dated July 12, 1977) in which Judge Finch ruled that the federal preemption doctrine was controlling in that public housing case.

[2] Plaintiff filed his motion to consolidate Civil Nos. 964-1973 and 90-1976 on August 6, 1976, reciting therein the Court's oral consent. These cases were treated as consolidated at hearings on October 25, 1976, and November 22, 1976, and thereafter in caption and otherwise, although no written order was found in the case file.

and separate relief for "breach of contract" and for the violation of his civil rights in Civil No. 90-1976.[3] In view of this demand and the appearance of plaintiff pro se, the Court feels compelled to discuss in some detail the factors which lead to the ultimate disposition of this case.

## I.

On February 5, 1976, plaintiff filed his complaint in Civil No. 90-1976 alleging defendant's failure to comply with the August 2, 1974, judgment of the Municipal Court in Civil No. 964-1973, and seeking a declaratory judgment as to its validity, demanding enforcement of its mandate, and praying for assessment of punitive damages and costs against the defendant. This complaint was amended by leave of Court and the amended complaint was filed on June 1, 1976, adding the allegation of a civil rights violation under 10 V.I.C. § 7 by the defendant.

Defendant filed its answer to the original complaint on April 13, 1976, denied it had violated the Judgment of August 2, 1974, questioned the validity of the stipulation underlying the judgment and the judgment itself as being violative of federal housing laws, and counterclaimed against plaintiff for unpaid rent and utility charges.

In completing the pleadings, plaintiff filed his answer to defendant's counterclaim on April 28, 1976, denying those allegations, and defendant filed its general denial on June 3, 1976, to plaintiff's amended complaint alleging civil rights violations.

After discovery by way of plaintiff's interrogatories to defendant, both parties filed motions for summary judgment (the defendant on July 1, 1976, the plaintiff on July 2,

---

[3] It appears that plaintiff should have filed a motion for an order compelling defendant to show cause why it should not have been held in contempt of court for "wilfully violating" the judgment of August 2, 1974, instead of filing this action for declaratory judgment, etc. 4 V.I.C. §§ 243 and 244. Clearly in such a case, the stipulation of February 4, 1977, would have settled all issues and no additional demands by plaintiff would be cognizable.

1976) but none was supported by affidavit.[4] Subsequently on March 16, 1977 defendant renewed its motion for summary judgment with an appropriate affidavit attached and plaintiff responded on March 21, 1977, and renewed his motion for summary judgment within the language of his supporting affidavit. Thereafter, the cross-motions for summary judgment were argued on June 23, 1977.

The Court, having reviewed the entire record in both Civil No. 964-1973 and Civil No. 90-1976, and having had the benefit of oral argument and additional time for legal review and deliberation, makes the following findings and conclusions.

## II.

The record establishes without question, and the Court therefore finds, that all factual issues raised in the pleadings, have been settled by the order amending judgment dated December 24, 1976, and the stipulation signed by the parties of February 4, 1977. A paragraph by paragraph analysis of the allegations in both the complaint and the counterclaim, and a comparison of those allegations with the aforesaid order and stipulation clearly demonstrate to the Court's satisfaction that no genuine issue of material fact remains to be determined. Not only did these final documents establish conclusively that the rental paid by plaintiff pursuant to the judgment dated August 2, 1974, was not to continue indefinitely, but they also settled all issues relating to rental and utility charges, and all other peripheral allegations.

Plaintiff acknowledges in his affidavit that his claim for actual damages in this action has been "settled by the Order dated December 24, 1976, and the stipulation signed by the parties dated February 4, 1977" in Civil No. 964-1973.

---

[4] In support of his motion, plaintiff submitted one document entitled "Affidavit" dated July 6, 1976; however, it was not acknowledged by nor sworn to before a notary public.

Defendant likewise acknowledges the binding effect of the order and stipulation of that civil action to the matter sub judice. Despite this, however, plaintiff maintains that his claims for $5,000 in damages for "mental suffering resulting from wanton and reckless breach of contract" and $5,000 in punitive damages "for violation of public policy against discrimination in the rental and lease of dwellings" are still recoverable. For the reasons enumerated below, seriatim, I disagree.

## A. Wanton and Reckless Breach of Contract

As noted above, the facts relating to this claim are undisputed because of the aforesaid Order Amending Judgment dated December 24, 1976, and the stipulation of the parties dated February 4, 1977, which established that defendant's interpretation of the August 2, 1974, judgment was correct. It is also undisputed that when defendant's costs and federal guidelines required an increase in rent it notified plaintiff accordingly, and that when plaintiff refused to pay the increased rental, defendant sought to evict him. But with judgment (and the underlying agreement) in hand, plaintiff alleged "breach of contract" against defendant.[5] It is this "breach of contract" based upon the aforesaid undisputed facts that plaintiff claims amounts to "wanton and reckless breach of contract" that led to his "mental suffering" for which damages in this sum of $5,000 is being demanded.

Plaintiff seems to believe that there was no merit whatsoever in defendant's contrary interpretation of the judgment in question and that absent such merit, defendant's attempt to increase the rent and evict him constituted "wanton and reckless behavior." Yet, plaintiff voluntarily consented to a deadline for the freezing of his rent in

---

[5] Plaintiff's claim of a "breach of contract" is misplaced. The "contract" of which plaintiff speaks is an underlying stipulation of the parties which was merged in the Judgment of August 2, 1974 in Civil No. 964-1973.

executing the stipulation. Moreover, the Court in entering its order amending judgment agreed with defendant's contention that a deadline date was intended. Thus, it appears that plaintiff had not expected to pay the fixed rental in the federally-assisted project forever. Indeed, his ultimate stipulation to accept rental increases after April 1977 proves that there was substantial merit to defendant's interpretation of the judgment. Accordingly, I conclude that no wanton or reckless behavior can be lawfully construed from the defendant's conduct.[6]

But even if we were to assume arguendo, that such a breach had been committed by the defendant, plaintiff's claim for such damages would be merged in the stipulation for settlement entered into on February 4, 1977, by the parties, thereby effectively terminating his claim. Consequently, all disputes with respect to the Order Amending Judgment and the said stipulation would have been determined and finalized, with no further or additional claim arising out of that transaction or occurrence being actionable by either party. Murtagh v. University Computing Co., 490 F.2d 810 (5th Cir. 1974), cert. denied, 419 U.S. 835, 95 S.Ct. 62(1964); Protective Closures Co. v. Clover Industries, Inc., 394 F.2d 809 (2nd Cir. 1968); Stull v. Baker, 410 F.Supp. 1326, 1332 (D.N.Y. 1976); Johnson, Drake & Piper, Inc. v. United States, 531 F.2d 1037, 1044 (Ct. Cl. 1976).

Moreover, plaintiff has admitted in the second paragraph of his affidavit that any disparity in his rental charges were corrected by the said order and stipulation. Thus, it is clear

---

[6] The terms "wanton" and "reckless" are commonly used to describe conduct in tort actions. In that context, these words describe such conduct which evinces a conscious disregard of or indifference to the probable consequences of an act. The actor realizes that injury is the probable consequence, yet he utterly disregards it. Friesen v. Chicago, R.I. & P.R.R., (Kan.) 524 P.2d 1141, 1147 (1974); Liebhart v. Calahan (Wash.) 434 P.2d 605, 606 (1967); Johnson v. Sexton, (Ala.) 173 So.2d 790, 792 (1965).

that no basis now exists for this "breach of contract" claim for damages by plaintiff.

## B. Civil Rights Violation

■ Here again, no genuine issue of material fact exists with respect to this claim, for it is undisputed that the defendant attempted to evict plaintiff when he refused to pay the increased rental. In addition, the rental increase imposed by defendant, and its refusal to accept plaintiff's tender of the lower rental, were based upon federally required base-rent and cost increases. This conduct by defendant was consistent with its interpretation of the August 2, 1974, Judgment and the final Stipulation of the parties.

■ Despite the foregoing, plaintiff cites Title 10 V.I.C., Chapter 1, §§ 1 and 7 in charging discrimination against the defendant, but nowhere within his pleadings or other submissions does plaintiff allege what type of discrimination is being charged. It is clear from even a cursory reading of Chapter 1 of Title 10 V.I.C. that it prohibits four specific types of discrimination, namely, discrimination based on "race, creed, color or national origin." It is therefore obvious that plaintiff's naked assertion of "discrimination" is insufficient to constitute an actionable charge against the defendant.

But even if a factual issue existed with respect to this claim and even if the proper specification of discrimination had been made this Court would be compelled to dismiss it. Dismissal would be required because of the enactment of a new Chapter 5 of Title 10 V.I.C. by Act No. 3519 on February 15, 1974.

Chapter 5 broadened the scope of Chapter 1 and in addition to prohibiting discrimination based on race, creed, color, or national origin it also prohibited discrimination based on age, place of birth, sex, and/or political affiliation.

505

But perhaps the most significant aspect of Chapter 5 is its establishment of the Virgin Islands Civil Rights Commission. This Commission is the administrative agency (within the Office of the Governor) which is now charged with enforcing the provisions of Title 10, including the conducting of investigations, the holding of hearings, and the imposition of sanctions regarding all allegations of civil rights violations.

■ Since plaintiff's complaint was filed on February 5, 1976, almost two years after the creation of the Virgin Islands Civil Rights Commission, it is apparent that his claim of civil rights violation should have been first filed with that administrative agency, and not with the court. Indeed, it is a well settled rule of law that a plaintiff must first exhaust his administrative remedies before seeking judicial relief. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657 (1969); United States ex rel Sanders v. Arnold, 535 F.2d 848, 851 (3rd Cir. 1976); Barnes v. Chatterton, 515 F.2d 916 (3rd Cir. 1975); American Federation of Government Employees v. Resor, 442 F.2d 993 (3rd Cir. 1971).

Accordingly, plaintiff's failure to exhaust his administrative remedies must result in the dismissal of his civil rights claim.

## III.

Having established that no genuine issue of material fact exists, it must now be determined whether plaintiff or defendant or both are entitled to summary judgment as a matter of law. F.R. Civ. P. 56; Abdallah v. Caribbean Security Agency, No. 77-1028 (3rd Cir., June 10, 1977); Scott v. Plante, 532 F.2d 939, 945 (3rd Cir. 1976); Tomalewski v. State Farm Life Insurance Co., 494 F.2d 882, 884 (3rd Cir. 1974).

■ The Court has no difficulty in resolving this legal question in the affirmative in favor of defendant. Here,

since the only substantial question raised by the pleadings and affidavits is the legal interpretation of a prior judgment, and since the legal effect of that judgment has been decided by order of the Court and stipulation of the parties, and further, since that decision is consistent with the defendant's interpretation of the judgment, the defendant is clearly entitled to summary judgment as a matter of law. See Government v. Gordon, 3 V.I. 623, 244 F.2d 818 (3rd Cir. 1957). Plaintiff's challenge to defendant's interpretation of the judgment by filing this action, even when taken in a light most favorable to him, provides no basis, factual nor legal, for denying defendant's motion. Accordingly, defendant's motion for summary judgment will be granted.

As indicated above, defendant has conceded that all disputes, including its counterclaim, were fully and finally determined by the order amending judgment dated December 24, 1976, and the final stipulation dated February 4, 1977. Defendant seeks nothing further. Plaintiff, while conceding that his claims for declaratory judgment and actual damages have been settled by the aforesaid order and stipulation, nevertheless seeks summary judgment for breach of contract and civil rights violation. Since I have determined, as enumerated above, that there is no legal merit to these remaining claims of plaintiff, his motion for summary judgment will be denied.